UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JAMES D. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-595-TAV-DCP |
| | ) | |
| PATRICK PEARSON, | ) | |
| in his official capacity, | ) | |
| DAVID MENDEZ, | ) | |
| in his official and individual capacities, | ) | |
| RON TALBOTT, | ) | |
| in his official and individual capacities, | ) | |
| BLOUNT COUNTY SHERIFF'S OFFICE, | ) | |
| BLOUNT COUNTY, and | ) | |
| 5TH JUDICIAL DRUG TASK FORCE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

In this case, brought under 42 U.S.C. § 1983, defendant has moved for summary judgment [Doc. 42]. Plaintiff responded in opposition [Doc. 48], defendants replied [Doc. 50], and plaintiff filed a surreply [Doc. 51], to which defendants have not responded nor moved to strike. Plaintiff asserts that the defendants violated his Fourth Amendment rights when they searched the curtilage of his residence. Contrary to defendants' argument, there is a genuine factual dispute about whether plaintiff has waived this claim. But because a reasonable officer could have believed that defendant disclaimed his privacy interest in the residence, qualified immunity is warranted. For this and the other reasons explained below, defendants' motion for summary judgment will be granted.

**I.     BACKGROUND**

Plaintiff James D. Watson filed this action under 42 U.S.C. § 1983, alleging that defendants violated the Fourth Amendment by unconstitutionally searching his home.[1] The defendants include the 5th Judicial Task Force, officers David Mendez and Ron Talbott in their official capacities, and officers David Mendez and Ron Talbott in their individual capacities.

Defendants Mendez and Talbott ("defendants" or "officers") are members of the 5th Judicial Task Force (the "task force") and are employed by the Blount County, Tennessee Sherriff's Office. The task force is a law-enforcement entity created by statute, whose primary function is to coordinate law-enforcement efforts to investigate and prevent drug trafficking. Task-force officers have normal police powers and enjoy statewide jurisdiction. In light of this, their duties are not limited only to drug-enforcement activities. For example, task-force officers regularly serve civil levies stemming from outstanding costs or fines related to drug crimes, and these payments provide funding for the task force.

On December 20, 2013, defendant Mendez and Deputy Patrick Pearson of the Blount County Sherriff's Office attempted to serve a civil levy, issued by the Blount County Circuit Court Clerk, on plaintiff at his presumed residence: 815 Old Reservoir Road in Maryville, Tennessee (the "residence"). The officers knocked on the front door

---

[1] Unless otherwise noted, the information in this section is drawn from plaintiff's response to defendants' statement of material facts [Doc. 49]. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that all facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party).

intermittently for approximately twenty minutes with no response. Around this time, defendant Talbott arrived at the residence.

Shortly after Talbott's arrival, plaintiff exited the residence. The officers explained that they were there to serve a civil levy on plaintiff.[2] In response to the officers' questioning, plaintiff made several statements regarding his interest in the residence. Plaintiff's response to defendants' statement of material facts states that it is "undisputed" that plaintiff stated he did not live at the house, the house belonged to his girlfriend who was inside at the time, and that he could not get back into the house because he left his keys inside [Doc. 49 p. 4]. Plaintiff's affidavit, however, states that he told the officers "[he] did not own the house but [he] had left [his] keys inside the house." Plaintiff's affidavit clarifies that he and his fiancée were leasing the house at the time but does not state that he told this information to defendants [Doc. 48-1 p. 2].

The officers proceeded to ask plaintiff whether he had anything of value on his person, and plaintiff produced change from his pocket. The officers declined to execute the levy at that time and told plaintiff that he was free to go. Plaintiff walked away from the residence.

After plaintiff left, defendants continued to knock on the front door and tried the knob to confirm that it was locked. They then walked around the exterior of the house "to look for items that could possibly be levied" [Docs. 42-1; 42-5]. "At the edge of the house,"

---

[2] The parties dispute the validity of the civil levy. Because the validity of the levy does not affect the Court's analysis, the Court need not address whether the levy was valid.

defendants state that they noticed the smell of marijuana coming from a crawl space vent [Doc. 44 p. 4]. Defendants continued walking around the house and noticed the same smell coming from a vent at the back of the house. During their walk around the edge of the house, defendants were three to five feet away from the crawl space vents [Docs. 42-1; 42-5]. Defendants also noticed what appeared to be partially smoked marijuana joints in a bucket on the front porch.

That same day, defendants obtained a search warrant for the residence based on the smell of marijuana, the apparent presence of partially smoked marijuana joints, previous complaints about suspicious activity at the residence, plaintiff's criminal record, and a tip from a confidential informant. Upon executing the warrant, defendants located a large amount of marijuana inside the residence, along with other evidence indicative of the sale and use of marijuana.

At some point, a forfeiture proceeding concerning plaintiff took place [Doc. 44 p. 6; Doc. 44-6]. The circumstances surrounding the forfeiture proceeding are unclear, but in relation to the forfeiture proceeding, plaintiff's attorney signed a release of liability, which stated in relevant part, "Claimant, by his or her signature below does waive any legal claim or cause of action which he/she might otherwise have as a result of any acts underlying this forfeiture proceeding" [Doc. 42-6]. Plaintiff does not dispute that his attorney signed this release, but plaintiff argues that he did not see the release before it was signed, that he was not aware that his attorney was signing away his right to bring the instant claim, and that his attorney had no authority to waive his right to file the instant claim [Doc. 48-1 p. 2].

Plaintiff brings this action under 42 U.S.C. § 1983, alleging that defendants violated his Fourth Amendment right against unreasonable searches [Doc. 1]. The Court stayed the case pending resolution of the underlying criminal proceedings, in which plaintiff had moved to suppress evidence derived from the officers' search of the residence [Doc. 11]. The trial court granted that motion, and the Tennessee Court of Criminal Appeals affirmed two to one, finding that plaintiff had not disclaimed his expectation of privacy in the residence [Doc. 27]. *See also State v. Watson,* 2017 WL 1324183 (Tenn. Crim. App. Apr. 10, 2017). The Court lifted the stay [Doc. 30], and defendants later filed the instant motion for summary judgment [Doc. 42].

## II. LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a genuine issue of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. *Id.* The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. ANALYSIS

Defendants present four arguments in their motion for summary judgment: (1) under the release agreement, plaintiff has waived his right to bring a § 1983 claim stemming from the December 20, 2013, search of the residence; (2) the task force is immune from suit; (3) the officers are immune from suit in their official capacities; and (4) the officers are entitled to qualified immunity and are thus not liable in their individual capacities. The Court will address each argument in turn.

### A. Release of Liability

Defendants argue that plaintiff's attorney signed a release of liability, which assertedly waived the instant claim as part of an agreed resolution of a related forfeiture proceeding. The language in question states, "Claimant, by his or her signature below does waive any legal claim or cause of action which he/she might otherwise have as a result of any acts underlying this forfeiture proceeding" [Doc. 42-6]. Plaintiff does not dispute that his attorney signed this waiver, but instead argues that he did not knowingly give his attorney authority to waive the instant claim.

Defendants rely on *Mason v. City of Warren Police Dept.*, No. 10-cv-14182, 2011 WL 5025841 (E.D. Mich. Oct. 21, 2011), to argue that a release of liability in a forfeiture settlement may preclude a party from bringing subsequent claims under § 1983. Defendants characterize *Mason* as follows:

> The [*Mason*] court explained that contracts are interpreted according to their plain and ordinary meaning, and a release of liability is valid if it was fairly and knowingly made. The plaintiff did not contest the release of liability as involuntary or unknowingly made, and the court determined, as a matter of

> law, that the settlement agreement was unambiguous on its face. The court held that the settlement agreement clearly stated the plaintiff's intent to release any and all claims arising from the property seizure in consideration for the release of her car.

[Doc. 43 p. 6 (internal citations omitted)].

The present case is distinguishable from *Mason* on two grounds. First, defendants provided a single sentence of context related to the forfeiture proceedings in question— "During the forfeiture proceedings, a Proposed Civil Settlement Agreement and Release of Liability was executed and signed by Joe Costner, the attorney for plaintiff" [Doc. 44 p. 6]. Based on the provided information, it is not "clear" or "unambiguous" that the language in question actually constitutes a waiver of a § 1983 claim stemming from defendants' venture into the curtilage of plaintiff's home after declining to serve the civil levy. It does not appear that any property was seized or forfeited until the subsequent execution of the search warrant. Thus, whether the initial attempted service of the civil levy and associated search of the curtilage constitute "acts underlying" the forfeiture proceeding in question is not clear or unambiguous.

Second, plaintiff has contested the validity of the waiver, and specifically argues it was "involuntary and unknowingly made." Plaintiff states that he had no opportunity to review the waiver before it was signed by his attorney, and that based on his conversations with his attorney he did not knowingly or voluntarily waive his right to pursue the instant claim in the future.

For these reasons, on the current record, there are disputed issues of material fact about the scope of the contractual language and the validity of the contract. It is telling

that defendant declined to address this issue in detail or cite to any case law supporting its position in its reply brief [s*ee* Doc. 50 p. 1]. Summary judgment on this basis is therefore not appropriate.

### B. Task Force Immunity

Defendants next argue that the task force is a state agency immune from suit under the Eleventh Amendment and is not a "person" subject to suit under § 1983. Plaintiff did not respond to this argument in its response brief or surreply [*See* Docs. 48, 51]. As defendants have presented a reasonable argument that the task force is immune from suit, and plaintiff has not responded to this argument, the Court will grant summary judgment in defendants' favor on this issue. E.D. Tenn. L.R. 7.2; *Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### C. Official Capacity Immunity

As was the case with task force immunity, plaintiff did not respond to defendants' argument that officers Mendez and Talbott are immune from suit in their official capacities [*See* Docs. 48, 51]. Because defendants have presented a reasonable argument on this issue and plaintiff has not responded, the Court will grant summary judgment in defendants' favor on this issue. E.D. Tenn. L.R. 7.2; *Cunningham v. Tennessee Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood . . . that when a

9

plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### D. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages when their conduct does not violate a clearly established statutory or constitutional right. *Greer v. City of Highland Park*, 884 F.3d 310, 314 (6th Cir. 2018). When a defendant relies on qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to immunity. *Id*. To meet this burden, the plaintiff must state facts in support of a plausible claim that the defendant's conduct violated a constitutional right that was clearly established at the time of violation. *Id*.

Resolving a claim of qualified immunity thus involves the following inquiry: the Court must determine whether, if the facts alleged by plaintiff are taken as true, a constitutional right was violated, and whether the right at issue was clearly established at the time of violation. *Id*. at 314–15; *Jacob v. Twp. of West Bloomfield*, 531 F.3d 385, 389 (6th Cir. 2008). In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Greer*, 884 F.3d at 316; *Andrews v. Hickman Cty.*, 700 F.3d 845, 853 (6th Cir. 2012). In other words, the unlawfulness of the defendant's conduct must be "apparent." *Id*. Whether a particular action is unlawful can be apparent from controlling

case law, either via direct holding or from a specific example described as unlawful, or from the general reasoning that a court employs. *Greer*, 884 F.3d at 316.³

### 1. Violation of a Constitutional Right

Defendants violated plaintiffs Fourth Amendment right against unreasonable searches when they searched the curtilage of his home without a warrant or an excuse for not obtaining one.

The Fourth Amendment protects against unreasonable searched and seizures, and "provides a potent shield against warrantless searches and seizures within the curtilage of a person's home." *Jacob*, 531 F.3d at 389. The area "immediately surrounding [a] home is entitled to the most robust Fourth Amendment protection," *id*. at 388, as "individuals possess a reasonable expectation of privacy in the area surrounding and appurtenant to the home," *Daughenbaugh v. City of Tiffin*, 150 F.3d 594 (6th Cir. 1998). In light of this, a warrantless search of the curtilage of a home by a law enforcement officer violates the Fourth Amendment unless an exception to the warrant requirement applies. *Andrews*, 700 F.3d at 854; *Jacobs*, 531 F.3d at 392 ("It is settled . . . that except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant . . . Where exceptions do exist to this general rule, they exist only in those exceptional circumstances in which

---

³ Plaintiff relies on the resolution of the suppression issue in his favor by the state court system to support several collateral estoppel arguments related to qualified immunity [Docs. 48, 51]. Because the Court need not rely on collateral estoppel to rule in plaintiff's favor on this issue, the Court will forego any collateral estoppel analysis.

special needs, *beyond the normal need for law enforcement*, make the warrant and probable cause requirement impracticable." (internal quotations and citations omitted; emphasis in original)).

Here, there is no dispute that defendants did not have a warrant when they initially arrived at the residence. And there can be no serious dispute that they entered the curtilage of the residence, as they approached within three to five feet of the home—so close that they could smell its contents. *Jacobs*, 531 F.3d at 389 ("When determining whether an area is subject to Fourth Amendment protection by virtue of being part of a home's curtilage, the ultimate question we must resolve is whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life."). Thus, defendants entered the curtilage of the home without a warrant.

Moreover, no exception to the warrant requirement existed at the time.[4] Such exceptions are rare and often clearly defined, as they involve special needs which make the warrant requirement impracticable. *Id*. at 392. In their motion, defendants have not articulated any of the common exceptions to the warrant requirement, such as consent, exigent circumstances, or a de minimis intrusion. *See Andrews*, 700 F.3d at 857 ("Under

---

[4] Although defendants do not specifically raise this argument, their possession of a civil levy against plaintiff did not give them authority to search the curtilage of the residence. In *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977), the Supreme Court found that possession of a tax levy did not allow officers to search an office for items subject to levy, and specifically declined to establish a new exception to the warrant requirement for levies or find that possession of a levy constituted exigent circumstances. *Id*. at 358–59. Although the instant case involved a civil levy and the curtilage of a home rather than a tax levy and an office, the Court finds that the Supreme Court's reasoning is equally persuasive when applied to the facts at issue here. So, while the officers claim they entered the curtilage "to look for items that could possibly be levied" [Docs. 42-1; 42-5], this justification for their search is inadequate.

clearly established law, the line has been drawn at the door to a person's residence, and an officer may enter only with a warrant, consent, or qualifying exception to the warrant requirement under exigent circumstances." (citing *Payton v. New York*, 445 U.S. 573, 590 (1980))). Instead, defendants main argument is that plaintiff's statements demonstrated an intent to disclaim his privacy interest in the residence, such that the officers could treat the residence as abandoned under *Abel v. United States*, 362 U.S. 217 (1960), and *State v. Ross*, 49 S.W.3d 833 (Tenn. 2001).

Defendant's disclaimer argument also does not excuse their lack of a search warrant. Defendants argue that, during their conversation, which occurred right after plaintiff had exited the residence, plaintiff stated or suggested that he did not own or live in the house. Warrantless searches of abandoned property do not violate the Fourth Amendment. *Abel*, 362 U.S. at 241. Courts have held that such abandonment may be shown by an intent to voluntarily relinquish a privacy interest, *Ross*, 49 S.W.3d at 842, and that such intent may be inferred from words spoken, *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

But here, plaintiff's statements did not convey an intent to relinquish his privacy interest in the residence. In plaintiff's affidavit, he states that he told the officers "[he] did not own the house but [he] had left [his] keys inside the house" [Doc. 48-1]. And even in the officers' version of events, which plaintiff does not dispute, plaintiff stated that he did not live at the house, that the house belonged to his girlfriend who was inside at the time,

and that he could not get back into the house because he left his keys inside [Doc. 44].[5] In both scenarios, plaintiff tells the officers that he had keys to the house, which suggests that he maintained a privacy interest in the residence. Furthermore, plaintiff had just walked out of the home at the time of his conversation with the officers, which undermines any argument that the officers thought he had abandoned the residence. Finally, the fact that plaintiff and his fiancée leased, rather than owned, the home at issue is immaterial because maintaining a privacy interest does not require ownership. *Cf. Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) ("Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home."). For these reasons, plaintiff did not disclaim his privacy interest in the home such that officers could treat it as abandoned.[6]

Based on the above, there is a genuine dispute of fact about whether a constitutional violation occurred. A civil levy is neither a warrant nor an exception to the warrant requirement, and plaintiff did not disclaim his privacy interest in the residence. As a result, the officers entered the curtilage of the residence without a warrant or an exception to the warrant requirement, in violation of plaintiff's Fourth Amendment rights.

---

[5] Although the Court is to view the facts in the light most favorable to plaintiff, for present purposes the choice between these two accounts is immaterial.

[6] The Court does not rely on the findings of the state courts in its analysis, but does note that the disclaimer issue was resolved in favor of plaintiff both at the trial and appellate level under a less deferential standard, seeing as those courts did not view the facts in the light most favorable to plaintiff in their analysis. *E.g.*, *State v. Watson*, 2017 WL 1324183 (Tenn. Crim. App. Apr. 10, 2017). Those decisions lend further support to the Court's conclusion that the officers violated plaintiff's Fourth Amendment right.

## 2. Whether the Rights at Issue Were Clearly Established

Although defendants violated plaintiff's Fourth Amendment right, they are entitled to qualified immunity because that right was not clearly established. It is plaintiff's burden to show that his "constitutional right was 'clearly established' at the time of the alleged violation, in that a reasonable officer would have known that his conduct was unlawful." *Greer v. City of Highland Park*, 884 F.3d 310, 314–15 (6th Cir. 2018). In other words, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Id.* at 316. This is "a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) ("[O]nce we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party . . . the reasonableness of Scott's actions . . . is a pure question of law.").

It is clearly established that officers cannot search the curtilage of a home without a warrant or an exception to the warrant requirement, and it is clearly established that the area defendants searched in this case was part of the curtilage. *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598–99 (6th Cir. 1998) (observing that Fourth Amendment protections extend to the curtilage of the home, which includes the area immediately surrounding the home, and warning that "police will be precluded in the future from relying on qualified immunity as a defense to warrantless searches of garages and backyards in situations similar to those herein," *id.* at 603). Defendants rightly do not dispute these points. But because a reasonable officer could have thought that plaintiff did, in fact,

15

disclaim his privacy interest in the later-searched residence, the officers did not violate plaintiff's clearly established constitutional right.[7]

Plaintiff has not met his burden of showing that the officer's actions violated clearly established law. Indeed, plaintiff has cited no precedent—let alone one strong enough to make the right at issue "clearly established"—that would have forbidden the officers from reasonably concluding that plaintiff had disclaimed his privacy interest in the residence. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality, . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.").[8]

Moreover, what case law there is appears to cut the other way. It is beyond the pale that warrantless searches of abandoned property do not violate the Fourth Amendment.

---

[7] In light of this conclusion, the Court need not decide whether it is clearly established that the officers' possessing a civil levy against plaintiff justified their warrantless search of the curtilage. Because the officers reasonably could have thought that plaintiff disclaimed his privacy interest, their warrantless search was justified, so clarifying this point of law would not affect the outcome of this case. Moreover, defendants did not raise this argument, and it probably would not have been successful: in *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 358–59 (1977), the Supreme Court held that officer's possessing a tax levy did not present an exigent circumstance or any other exception to the warrant requirement and declined to establish a new exception to the warrant requirement for levies. There do not appear to be any meaningful distinctions between civil and tax levies for Fourth Amendment purposes. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) ("It is not necessary, of course, that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point.").

[8] To the extent plaintiff argues that res judicata and collateral estoppel prevent the Court from deciding whether the officers' actions violated clearly established federal law, he is mistaken, seeing as the state court's ruling dealt with suppression, not qualified immunity.

*See Abel v. United States*, 362 U.S. 217, 241 (1960). "For Fourth Amendment purposes, the notion of 'abandonment' turns upon whether a person can claim a continuing, legitimate expectation of privacy in the item at issue." *United States v. Robinson*, 390 F.3d 853, 873 (6th Cir. 2004). In *State v. Ross*, 49 S.W.3d 833 (Tenn. 2001), the Tennessee Supreme Court held that an individual had disclaimed his privacy interest in a hotel room when he told officers that a key to the room found in his sock did not belong to him. *Id.* at 841–42. The court found that this statement was a "disclaimer or denial of ownership demonstrate[ing] sufficient intent of disassociation to prove abandonment." *Id*. Based on these precedents, a reasonable officer could have believed that plaintiff's statements fell within the Tennessee Supreme Court's holding in *Ross* and thus amounted to a disclaimer of his privacy interest in the residence. Further, one of the judges on the Tennessee Court of Criminal Appeals dissented on the ground that plaintiff had disclaimed his privacy interest in the residence. *See State v. Watson*, 2017 WL 1324183, at *8 (Tenn. Crim. App. Apr. 10, 2017). Because "to be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up), the state-appellate-court judge's disagreement lends further support to defendants' position that the disclaimer issue was not clearly established.

Because a reasonable officer could have understood plaintiff's statements to have disclaimed any privacy interest plaintiff held in the later-searched residence, the officers were entitled to qualified immunity.

17

## IV. CONCLUSION

For the reasons explained above, defendants' motion for summary judgment [Doc. 42] will be **GRANTED** in full. A separate order will follow. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE